IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| CHIYA C. PEARSON LLOYD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 19-00236-CV-W-ODS |
| | ) | |
| TRANSUNION, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

<u>ORDER AND OPINION (1) GRANTING DEFENDANT'S MOTION TO ENFORCE
SETTLEMENT, AND (2) DENYING PLAINTIFF'S MOTION FOR HEARING</u>

Pending are Defendant Equifax Information Services, LLC's Motion to Enforce Settlement (Doc. #36), and Plaintiff Chiya Pearson Lloyd's Motion for Evidentiary Hearing (Doc. #42). For the following reasons, Defendant's motion is granted, and Plaintiff's motion is denied.

## I.  BACKGROUND

Throughout September and October 2019, the parties discussed potentially settling this matter, which alleges violations of the Fair Credit Reporting Act ("FCRA"). Defendant argues the parties reached a settlement agreement via email. On September 20, 2019, Defendant's counsel emailed Plaintiff:

> This figure is offered in exchange for a general release of your claims against [Defendant] and a promise to keep the settlement confidential. In addition, you would review and approve copies of your credit reports from [Defendant] and they would be attached to [Defendant's] standard settlement agreement.

Doc. #36-1, at 4. On September 23, 2019, Defendant emailed Plaintiff stating, "I am confirming that we are settled at [undisclosed amount] with the terms below. I will draft the settlement agreement and release and forward . . . it to your [sic] forthwith." *Id.* That same day, Plaintiff, who is a licensed attorney but is proceeding pro se in this matter, responded by thanking Defendant's counsel. *Id.*

On October 2, 2019, Defendant sent a draft Settlement Agreement and Release ("Agreement") to Plaintiff for her review and signature. *Id.* at 7. Plaintiff refused to sign

the Agreement. She maintained one paragraph was "overly broad" and asked Defendant for clarification. *Id.* at 79. Defendant's counsel informed Plaintiff the Agreement was "intended to encompass a meeting of the minds as to the state of the credit file at a certain point in time, and a release of all claims or potential claims prior to that point in time." *Id.* In response, Plaintiff stated she "could agree to dismiss and/or waive all claims that could have been brought against Equifax at the time *of that particular litigation*." *Id.* at 82 (emphasis added). Defendant sent Plaintiff a revised draft of the Agreement, which was nearly identical to the initial draft.[1] Plaintiff signed the Agreement on October 5, 2019. *Id.* at 90. Defendant never signed the Agreement. *Id.*

Five days after she signed the Agreement, Plaintiff emailed Defendant stating she did not accept the Agreement based on the "new terms" Defendant inserted. *Id.* at 99. Defendant responded by stating no new terms were added. *Id.* A disagreement between the parties regarding the terms of the Agreement ensued via email, leading Defendant to file the pending motion to enforce the settlement.

In its motion, Defendant asks this Court to enforce the Agreement, which included a general release of all claims against it as of October 5, 2019, the date Plaintiff signed the Agreement. Plaintiff seems to argue the Agreement only releases the claims against Defendant in this lawsuit but does not require her to dismiss her claims against Defendant in another FCRA lawsuit. That is, Plaintiff filed a second FCRA lawsuit against Defendant. *Lloyd v. FedLoan Servicing*, No. 4:19-cv-00762-FJG. In the second FCRA lawsuit, Plaintiff alleges she was disqualified from securing a mortgage loan because Defendant (and others) displayed inaccurate information about her student loan payments on her credit report. *Id.* This order addresses Defendant's motion to enforce the Agreement in the matter pending before the undersigned only.

## II. STANDARD

"The district court has inherent power to enforce a settlement agreement as a matter of law when the terms are unambiguous." *Barry v. Barry*, 172 F.3d 1011, 1013 (8th Cir. 1988) (citation omitted). A legal, valid settlement agreement must possess all

---

[1] The only difference between the Agreements is the date of the attached consumer credit report. *Compare* Doc #36-1, at 9, with Doc. #36-1, at 87.

the essential elements of a contract. *Tirmenstein v. Cent. States Basement & Found. Repair, Inc.*, 148 S.W.3d 849, 851 (Mo. Ct. App. 2004).[2] In construing a release, as in any contract, the intentions of the parties govern. *Slankard v. Thomas*, 912 S.W.2d 619, 624 (Mo. Ct. App. 1995). "Where the parties have expressed their final agreement in writing and there is no ambiguity in the contract, the parol evidence rule requires that the court determine the intent of the parties solely from the 'four corners' of the contract itself." *Mid Rivers Mall, L.L.C. v. McManmon*, 37 S.W.3d 253, 255 (Mo. Ct. App. 2000).

### III. DISCUSSION
#### A. The Agreement Is a Completely Integrated Contract

If a written agreement appears on its face to be a complete agreement, it is presumed to be a final and complete agreement between the parties. *Exec. Bd. of the Mo. Baptist Convention v. Carnahan*, 170 S.W.3d 437, 448 (Mo. Ct. App. 2005). "A contract is integrated where it constitutes a complete statement of the bargain between the parties." *Id.* (citation omitted). Extrinsic evidence is not admissible to vary, add, or contradict the terms of an unambiguous and complete written document. *Id.* at 447. Plain and unambiguous language will be given effect within the context of the agreement. *Slankard*, 912 S.W.2d at 624.

The Agreement contains a clear description of the consideration bargained for by Plaintiff in exchange for dismissal of her claims against Defendant. The Agreement also contains a merger clause, which states it is "the sole and entire agreement between Plaintiff and [Defendant] and supersedes all prior agreements, negotiations, and discussions between the Parties with respect to the subject matter covered in it." Doc. #36-1, at 88. On its face, the Agreement is final, complete, and integrated. Thus, the Court will not consider extrinsic evidence unless the Agreement's terms are ambiguous.

#### B. The Terms of the Agreement Are Unambiguous

"Where the language of a contract is unambiguous, the intent of the parties is to be gathered from the contract alone." *Exec. Bd. of the Mo. Baptist Convention*, 170

---

[2] The parties cite and rely on Missouri law. The Court does the same.

S.W.3d at 448 (quoting *Dunn Indus. Grp. v. City of Sugar Creek*, 112 S.W.3d 421, 428-29 (Mo. banc 2003)).  A court will not resort to construction where the intent of the parties is expressed in clear, unambiguous language.  *Id.*  A contract is ambiguous only if its terms are susceptible to fair and honest differences.  *Id.*  Parol evidence may not be used to create ambiguity or contradict terms in an otherwise unambiguous contract.  *Id.* at 450; *Pac. Carlton Dev. Corp. v. Barber*, 95 S.W.3d 159, 165 (Mo. Ct. App. 2003).

The Agreement states, "Plaintiff . . . release[s] and forever discharge[s] [Defendant] . . . from any and all . . . claims . . . now existing and up to the date on which Plaintiff signs this Agreement including, without limitation, any obligations under the Fair Credit Reporting Act."  Doc. #36-1, at 86.  The language is unambiguous.  When she signed the Agreement on October 5, 2019, Plaintiff agreed to release and discharge her claims against Defendant existing at that time.  *Id.*  This lawsuit, which was filed in February 2019, existed before Plaintiff executed the Agreement, and therefore, she released her claims she alleged against Defendant in this lawsuit.

### C. The Agreement Provided Adequate Consideration

Plaintiff argues the Agreement is not supported by adequate consideration.  Doc. #39, at 3.  The formulation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration.  Restatement (Second) of Contracts § 17 (Am. Law Inst. 1981).  "The recitation of consideration in an agreement is prima facie evidence that consideration to support the agreement was present."  *Austin v. Trotter's Corp.*, 815 S.W.2d 951, 953 (Mo. Ct. App. 1991) (internal quotations and citation omitted).

The Agreement states, "in consideration of the mutual promises, terms, and conditions contained herein . . . [Defendant] agrees to the total amount of [undisclosed amount]" which will be paid to Plaintiff.  Doc. #36-1, at 86.  The Agreement also states, "Plaintiff . . . hereby release[s] and forever discharge[s] [Defendant] from all . . . claims . . . now existing and up to the date on which Plaintiff signs this Agreement…."  *Id.*  In addition, Plaintiff agreed to dismiss this matter with prejudice "[w]ithin five days of execution of this Agreement."  *Id.*

Plaintiff argues the only consideration provided by Defendant was to remove the "derogatory mark from [her] credit file," which the parties discussed via email. Doc. #39, at 3. However, when presented with an integrated, unambiguous contract, the Court stays within the "four corners" of the document to interpret the elements of a valid contract. *See supra*, § II(A). The Agreement establishes Defendant agreed to pay Plaintiff. Thus, the Court finds adequate consideration supports the Agreement.

In her motion, Plaintiff contends Defendant reinserted the inaccurate mark on her credit report in December 2019, which she claims indicates Defendant did not intend to abide by the Agreement. Doc. #42, at 7. Turning again to the Agreement, Plaintiff acknowledged the consumer credit report attached to the Agreement was accurate. Doc. #36-1, at 88. She also agreed that she would "not initiate any legal action against [Defendant] . . . based on the information contained in" the credit report attached to the Agreement. *Id.* Presumably, Defendant had removed the mark. Defendant's alleged later reinsertion of the mark is not evidence of its unwillingness to abide by the Agreement. If Plaintiff wishes to pursue legal action against Defendant for allegedly reinserting the mark, she may do so. However, her remedy is not opposing enforcement of the settlement agreement or, as discussed *infra*, an evidentiary hearing.

### D. **Defendant's Actions Show Intention to be Bound to the Agreement**

Plaintiff argues the Agreement is nonbinding because Defendant did not sign it and points to *Baier v. Darden Restaurants* as "strikingly similar" to her case. 420 S.W.3d 733, 738 (Mo. Ct. App. 2014). The Court disagrees. Here, unlike in *Baier*, Plaintiff offers no evidence that Defendant did not intend to be bound by the Agreement.

Moreover, a party's signature is not the exclusive method of demonstrating agreement. *Id.* at 738 (quoting *Morrow v. Hallmark Cards, Inc.*, 273 S.W.3d 15, 22-23 (Mo. Ct. App. 2008)). Acceptance can also be demonstrated by conduct. *Id.* In this matter, the Agreement is more analogous to *Coleman v. Bristol Care, Inc.*, in which the defendant did not sign the arbitration agreement, yet the court held, "[T]he conduct of the employer unambiguously indicated its intent to be bound by the terms of the contract." No. 6:18-cv-04069-MDH, 2018 WL 3848821, at *8 (W.D. Mo. Aug. 13, 2018).

Defendant's conduct shows its intent to be bound by the Agreement.  Defendant intended to enter into a contract bargaining for a general release of Plaintiff's claims against Defendant in exchange for an undisclosed payment.  Defendant tendered payment to Plaintiff.  This conduct unambiguously shows Defendant's intent to be bound by the Agreement.  Thus, Plaintiff's argument that the Agreement is nonbinding fails.

### E. **Plaintiff's Request for an Evidentiary Hearing**

After Defendant's motion to enforce the settlement was fully briefed, Plaintiff moved for an evidentiary hearing.  Doc. #42.  Plaintiff argues, among other things, there was no meeting of the minds, the Agreement does not apply to the second FCRA lawsuit, both parties were required to sign the agreement, and Defendant has breached the Agreement. Doc. #42.  However, when the terms of a contract are unambiguous, the Court interprets the contract as it appears on its face.  *See supra*, section II(B).  Because the Agreement is an unambiguous, integrated contract, extrinsic evidence cannot be considered by the Court.  Thus, there are no disputed terms requiring an evidentiary hearing.

### IV. CONCLUSION

For the foregoing reasons, the Court finds the parties agreed to settle this matter, and the parties' Agreement is enforceable.  Thus, the Court grants Defendant's Motion to Enforce Settlement and denies Plaintiff's Motion for Evidentiary Hearing.
IT IS SO ORDERED.

DATE: February 26, 2020 /s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT